# UNITED STATES of America

### v.

## Hugo J. CARDUCCI.

### Crim. A. No. 82–93.

United States District Court,
W.D. Pennsylvania.

June 20, 1983.

J. Alan Johnson, U.S. Atty., Bruce Teitelbaum, Asst. U.S. Atty., Pittsburgh, Pa., for Government.

H. David Rothman, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

WEBER, District Judge.

Defendant has moved to dismiss his indictment on drug charges, alleging that he has been subjected to double jeopardy. After an evidentiary hearing and argument of counsel, we conclude that no double jeopardy violation has occurred and defendant's motion will therefore be denied.

The trial of Carducci and his co-defendant, John "Jocko" Heatherington began on August 2, 1982, and was to continue at 9 a.m. on August 3. On the evening of August 2, Heatherington was fatally wounded by an assailant. The shooting was reported on the morning radio news programs.

On the morning of August 3, counsel for Carducci requested a mistrial. A colloquy was conducted by defense counsel and the court in which the right to resume the trial and the purpose and effect of the mistrial were explained to Carducci. The defendant responded to all questions, indicated an understanding of the proceedings and their effect, and expressly approved the motion for mistrial. The court granted the motion.

Carducci was retried on November 2, 1982 and convicted. Prior to sentencing he selected new counsel and filed a motion for new trial, alleging the existence of a conflict of interest for his original defense counsel, which conflict adversely affected his defense at the November retrial. After an evidentiary hearing we concluded that such a conflict and adverse effect existed

and a new trial was ordered. *United States v. Carducci*, 557 F.Supp. 531 (W.D.Pa.1983).

Defendant subsequently filed a Motion to Dismiss the indictment for violation of defendant's right to be free from double jeopardy. This motion was denied in a brief memorandum order of May 6, 1983. Carducci's counsel renewed the motion, both orally and in writing. An evidentiary hearing on the motion was conducted and argument of counsel heard on June 14, 1983. For the reasons stated herein, defendant's motion to dismiss the indictment will be denied.

Defendant argues that although he expressly waived his double jeopardy rights in the colloquy on August 3, 1982, his waiver was the product of advice of trial counsel who was laboring under a conflict of interest. We will therefore apply the standards in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), governing a conflict of interest claim on post-trial motion. Our inquiry then is whether a conflict of interest existed for trial counsel which adversely affected his advice to Carducci on the mistrial motion and the waiver of his right to continue with the trial.

The threshold question is whether a conflict existed at all on the morning of August 3. Carducci has alleged that prior to the arrival at court that day, trial counsel had undertaken the representation of a man later charged with Heatherington's murder. The facts establish that counsel was representing this individual on other matters at the time of Heatherington's shooting, could anticipate future representation of this individual, knew that this individual was a close business associate of Heatherington, and may have surmised that not all of their business was legitimate. From the close relationship between Heatherington and this man, counsel could have anticipated that his client may be sought for questioning, if nothing more. However, the attorney-client privilege has been asserted by counsel as to his conversations on August 3 with this individual, and an obstacle to further inquiries regarding the time that the attorney-client relationship began has been

raised. Thus some uncertainty remains as to whether a conflict actually existed prior to counsel's meeting with Carducci on the morning of August 3. We need not resolve this question however because we conclude that even if a conflict existed, Carducci has failed to establish that it had any adverse affect on trial's counsel's assistance and advice on August 3, 1982.

Defendant's central argument is that trial counsel should have insisted on individual voir dire of the jury, and then explained to Carducci that Heatherington's shooting could inure to Carducci's benefit. The argument goes that because Carducci had pled entrapment and his tactical position was to assume the role of a little man caught up in something he never wanted, the events involving Heatherington would vividly paint Heatherington as the principal figure in the criminal activity and the target of the investigation. While admittedly this scenario was not presented to Carducci on the morning of August 3, it was not a realistic alternative at that time.

Carducci's trial had garnered some newspaper attention prior to Heatherington's shooting. On the morning of August 3, Carducci faced heavy publicity centering on the gangland style shooting of a man he was admittedly involved with in a drug transaction. Nor would publicity end with Heatherington's shooting, but could now be expected to follow the remaining trial with heightened intensity, casting the spotlight squarely on Carducci. Such attention was clearly inconsistent with Carducci's attempt to appear as a minor character. Furthermore, the gangland elements of the shooting could seriously prejudice Carducci in the eyes of the jury, even if he had no such connections.

Individual voir dire of the jury was also fraught with problems. Subsequent inquiry determined that two jurors had heard news accounts that morning. Further contact with publicity could only be avoided by sequestration. Although we have the highest regard for the integrity of jurors, individual voir dire in the middle of trial, sudden imposition of sequestration, and the disappearance of Heatherington would only create an atmosphere ripe for wild speculation which might grow despite admonitions from the court.

Carducci's physical condition also presented a serious problem on August 3. Apparently not a well man under normal conditions, the events of the previous evening had left him visibly shaken. If he were to testify, as he did on retrial, his effectiveness as a witness in his own defense could only be diminished by his condition on August 3.

Although the defendant now sees a tactical advantage in the events of August 2, the more serious and most likely possibility was that Carducci's fair trial would be lost in a storm of publicity and prejudice. Under the circumstances existing on the morning of August 3, it would have been unconscionable for trial counsel to suggest any course other than a mistrial. Because the alternative proposed by current defense counsel with the benefit of hindsight was not a realistic choice on August 3, we conclude that any conflict of interest afflicting trial counsel had no adverse affect on his representation of Carducci.

Further, even if the failure of trial counsel to present the described scenario to the defendant is considered adverse, there is no evidence to indicate that this failure was motivated by trial counsel's representation of another individual. In fact it would likely have been to the advantage of trial counsel's other client to see the trial continue, and to have certain defense witnesses cross-examined by the government before their full involvement with the individual became known. In short, no connection between trial counsel's representation of another client and his advice to Carducci on August 3 can be inferred from the facts presented.

Defendant has made much of the timing of a phone call from trial counsel to two defense witnesses on the morning of August 3. Defendant has alleged that trial counsel called these witnesses prior to speaking with Carducci about the mistrial motion and told them that they need not appear in court that day because a mistrial

would be granted. One of the witnesses testified that the call came at 8:00 a.m. Trial counsel testified he made the call at 10:00 a.m., after the mistrial was granted and proceedings had concluded. We note that the testimony of the defense witness was conflicting, and she was very uncertain about dates and other details as well as time. For these reasons her testimony is unreliable. However, even if her testimony is accepted as true, the incident had no adverse effect. Though trial counsel may have been presumptuous, a mistrial was in fact granted. The witnesses were not needed, and there is no indication that their absence affected Carducci's decision to seek the mistrial.

In the event that defendant's motion may be viewed as raising a claim that Carducci's waiver was induced by ineffective assistance of counsel, without regard to the conflict of interest, we reject that defense as well. The facts discussed above lead us to conclude that trial counsel exercised the customary skill and knowledge prevailing among the members of this Bar in his advice and assistance on August 3. His representation of Carducci on that day was competent and meets the constitutional standard. See, *Moore v. United States,* 432 F.2d 730 (3d Cir.1970).

For the reasons stated above, we conclude that if any conflict of interest existed for trial counsel, it did not adversely affect his advice and assistance on the morning of August 3, 1982. We further conclude that trial counsel did not provide ineffective assistance, but that his assistance on the matters of mistrial and waiver were competent. Defendant's motion to dismiss the indictment will therefore be denied.